*480 OPINION.
Arundell:
The only question before us is whether or not petitioners are resident foreign corporations taxable under section 231 (b) of the Revenue Acts of 1936[1] and 1938.[2] Petitioners contend that they were engaged in business in the United States during the taxable years and had an office or place of business here. They maintain that for these reasons they were resident foreign corporations during the taxable years. Respondent argues that petitioners had no real office or place of business in the United States and transacted no business in this country. Pie argues that petitioners’ “office” was engendered solely for tax purposes and had not the substance of a real office.
A resident foreign corporation is defined in section 231 (b) as a foreign corporation engaged in trade or business within the United States or having an office or place of business here. In Linen Thread Co., Ltd. v. Commissioner, 128 Fed. (2d) 166, the Second Circuit Court of Appeals held that the terms “office” or “place of business” are not “mutually exclusive and though used in the statute in the disjunctive do not necessarily mean that an office may not be a place of business or the latter be but an office. Yet they apparently were not used synonymously * * The court further placed its stamp of approval on the Commissioner’s regulations (art. 231-1 (b), Regu *481 lations 101, promulgated under the Revenue Act of 1938), which provide that,
Whether a foreign corporation has an “office or place of business” within the United States depends upon the facts in a particular case. The term “office or place of business,” however, implies a place for the regular transaction of business and does not include a place where casual or incidental transactions plight be, or are, effected.
Other cases that throw light on the question presented are Aktiebolaget Separator, 45 B. T. A. 243; affirmed per curiam, 128 Fed. (2d) 166, and the Board’s opinion in B. W. Jones Trust, 46 B. T. A. 531.
With these fundamental concepts in mind, a brief resume of the facts will be helpful in reaching the conclusion whether or not petitioners have established within the United States an “office or place of business” within the meaning of the statute.
Petitioners are among the very largest of the foreign investment trusts with American holdings. Their investments were made primarily in conservative companies and they were interested in safety and an adequate return rather than in capital enhancement. The American investments represented many millions of dollars. It is not questioned that during the taxable years petitioners were actively engaged in carrying on the business for which they were organized.
Prior to December 1936 these petitioners had an arrangement with J. P. Morgan & Co. and the National City Bank to collect the income from their American securities and to otherwise keep them advised with reference to these securities. While these arrangements appear on the whole to have been satisfactory, there was some dissatisfaction with the failure to receive prompt information about the companies in which petitioners held securities and the Scottish company some time before had been required to pay more than $200,030 interest to the United States Government by reason of its failure to promptly pay certain taxes which it did not realize were due. In order to secure better representation within the United States and because the Revenue Act of 1936 offered certain tax advantages to foreign corporations that established an office or place of business within the United States, petitioners decided in December of that year to establish such offices and took steps to that end by the designation of Cooper as assistant secretary of each of petitioners. He immediately and within the month rented space and opened offices and started business.
The offices so established by Cooper in behalf of petitioners and maintained through the several years, in our judgment, meet the test of the statute. They were not places for the mere handling of a casual or incidental matter, but in these offices were carried on regularly the various transactions that these offices were established to care for. *482 Cooper was in charge and had under his direction two full time employees. Full and adequate records, as detailed in our findings of fact, were kept for each petitioner in the United States offices and it was here that all dividend checks were sent and thereafter deposited, and action on all proxies determined. Petitioners’ home offices were kept informed of general developments in the United States and specific reports were made concerning petitioners’ United States holdings. Reorganization plans of corporations in which petitioners owned securities were carefully followed and recommendations were made to the home offices concerning what steps, if any, should be taken to protect petitioners’ interests. Stock rights and scrip when received were disposed of by petitioners’ American representative without consultation with the home offices.
All United States tax returns of petitioners were prepared by the staff located in the United States. Moreover, the office expenses were not inconsequential. The expenses of Scottish, for example, ranged from a low of $1,382.78 for the short period of operation in December 1936 to a high of $9,391.36 for 1938.
In our opinion, an office handling affairs to this extent must be regarded as real and substantial. It was here that a very large part of the affairs of petitioners in this country were taken care of. What we said in B. W. Jones Trust, supra, seems apropos:
* * * Here there is nothing artificial about the office maintained for the trusts. This office was not merely a name or desk space for receiving dividends (see Recherches Industriclles. 45 B. T. A. 253), but an office in the sense of the common everyday conception. It was not established for purposes of compliance with a statute but was maintained in this country because of the administrative necessity of having local supervision of its affairs. Whatever affairs of the trusts were conducted in this country were transacted through that office. * * *
Nor do we think one can take one by one each activity carried on in the American office of these petitioners and argue that each activity is not in and of itself the transaction of business. The collection of dividends and interest by a railroad that had leased its entire property and had ceased to function as such may not constitute the doing of business within the purview of the Revenue Act of 1909, McCoach v. Mine Hill & S. H. R. Co., 228 U. S. 295, but it does not follow that the collection of the income of a large investment trust from hundreds of different sources is not to be regarded as the transaction of business. To reason otherwise might well lead to the conclusion that investment trusts are not engaged in carrying on a business.
Even if it be true that tax considerations prompted the opening of the offices in the United States, it would be of no particular significance. Congress extended the invitation to foreign ■ corporations to establish an office or place of business in this country. So long as the office is not a sham but 'is a place for the transaction of business, peti *483 tioners qualify under section 231 (b). It should be noted that petitioners by opening offices in this country subjected themselves to the imposition of tax on certain gains on which they would not have been taxed had they been nonresident foreign corporations. See section 231 (a) of the Eevenue Acts of 1936 and" 1938 and Regulations 94 and 101, article 231-2 (a). Thus, if the petitioners had extensive capital gains in the taxable years they might well have been required to pay a greater tax by reason of being resident foreign corporations. The fact that the United States office was relatively small and that it was occupied by all three petitioners is not important. The joint occupancy of the office was a logical result of the fact that each of petitioners was engaged in a similar business.
We think petitioners have established that during the taxable years they had within the United States an office or place of business within the meaning of section 231 (b), sufra/ that the office was used for the regular transaction of business and not as a place where casual or incidental transactions might be, or were, effected. The conclusion reached requires that the year 1936 be accorded the same treatment as the latter years involved herein. The respondent is reversed.

Decisions will be entered under Rule 50.

 SEC. 281. TAX ON FOREIGN CORPORATIONS.
*******
(b) Resident Corporations. — A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a), but the normal tax imposed by section 13 shall be at the rate of 22 per centum instead of at the rates provided in such section.

 (b) Kesident Corporations. — A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable as provided in section 14 (e) (1).